# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

RANDALL L. SPITZMESSER,

    Plaintiff,

v.

TATE SNYDER KIMSEY
ARCHITECTS, LTD., a Nevada Domestic
Professional Corporation; ROE BUSINESS
ENTITIES I-X; DOE INDIVIDUALS I-X ,

    Defendants.

Case No. 2:10-cv-01700-KJD-LRL

**ORDER**

Presently before the Court is Plaintiff's Motion to Amend Complaint and Add Party (#29). Defendant filed a Response in opposition (#30) to which Plaintiff replied (#32). Also before the Court is Defendant's Motion to Dismiss, or in the Alternative for Partial Summary Judgment (#4). Plaintiff filed a Response in opposition (#8) to which Defendant replied (#11).

**I. Procedural History**

On August 25, 2010, Randall L. Spitzmesser ("Spitzmesser") filed the present Complaint (#1-1) in the District Court of Clark County Nevada against his former employer, Tate Snyder Kimsey Architects, LTD. ("Tate Snyder"), asserting eight (8) causes of action: (i) Breach of Contract; (ii) Breach of Implied Covenant of Goof Faith and Fair Dealing; (iii) Defamation Per Se;

(iv) False Light Invasion of Privacy; (v) Retaliatory Discharge in Violation of Public Policy; (vi) Unjust Enrichment; (vii) Injunctive Relief; (viii) Retaliatory Discharge in Violation of the Fair Labor and Standards Act ("FLSA").  On September 30, 2010, Plaintiff's case was removed to the United States District Court District of Nevada pursuant to 28 U.S.C. § 1331.

On October 6, 2010, Defendant Tate Snyder filed the present Motion to Dismiss or in the Alternative for Partial Summary Judgment (#4) asserting that Plaintiff has not adequately plead his third, fourth, fifth, and eighth claims.  Plaintiff subsequently filed his Motion to Amend Complaint and Add Party (#29).  The proposed amended complaint adds a ninth cause of action for breach of fiduciary duty, edits the fifth cause of action, retaliatory discharge in violation of public policy, to include statutory violations, and adds Tate Snyder's majority shareholder James Windom Kimsey as a party defendant.  (#29, Exhibit 1).  Plaintiff's claims arose out of his termination from Tate Snyder after he expressed opposition to allegedly being forced to contribute to Senator Harry Reid's reelection campaign and after he complained to the majority shareholder that he believed the firm was violating FLSA.

**II.  Plaintiff's Motion to Amend Complaint and Add Party**

Plaintiff seeks leave to amend by adding an additional claim for Breach of Fiduciary Duty, making changes to the fifth claim for Retaliatory Discharge in Violation of Public Policy, and adding James Windom Kimsey ("Kimsey") as a party defendant. (#29).  Generally, the standard for granting leave to amend under Fed.R.Civ.P. 15 is, as the Ninth Circuit explained,

> A district court "shall grant leave to amend freely 'when justice so requires.' " Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir.2000) (en banc) (quoting Fed.R.Civ.P. 15(a)). We have stated that "this policy is to be applied with extreme liberality." Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir.1990); see also Griggs v. Pace Am. Group, Inc., 170 F.3d 877, 880 (9th Cir.1999) (noting that inferences should be drawn "in favor of granting the motion"). ***In determining whether leave to amend is appropriate, the district court considers "the presence of any of four factors***: bad faith, undue delay, prejudice to the opposing party, and/or *futility*." Griggs, 170 F.3d at 880.  Owens v. Kaiser Foundation Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001) (emphasis added).

Defendant argues that the Motion to Amend should be denied because the proposed amendments fail to state claims upon which relief may be granted and therefore are futile. (#30).

A. Breach of Fiduciary Duty (Proposed Added Claim ix)

Plaintiff asserts that as a minority shareholder of a small closely held corporation, Defendant Tate Snyder and proposed added defendant/controlling majority shareholder, Kimsey (collectively "Defendants"), owed him a fiduciary duty of good faith and loyalty. Defendants allegedly breached that duty by terminating Plaintiff's employment with "malice, fraud, and oppression with the intent to thwart and frustrate Plaintiff's reasonable expectations with respect to the return he expected to receive on his investment in [Tate Snyder]." (#29, Exhibit 1). Defendant asserts that this claim is futile because there is no fiduciary duty owed to Plaintiff as a shareholder.

Guidance on fiduciary duties owed to minority shareholders who are also employees in closely held corporations under Nevada law can be found in a Fifth Circuit case which, based on Texas choice of law principles, made a prediction on how the Nevada Supreme Court would rule on this issue. Hollis v. Hill, 232 F.3d 460 (5th Cir. 2000). The Hollis court held:

> ". . . shareholders do not enjoy fiduciary-rooted entitlements to their jobs. Such a result would clearly interfere with the doctrine of employment-at-will. Rather, the courts have limited relief to instances in which the shareholder has been harmed as a shareholder. The fiduciary duty in the close corporation context, as in the context of public corporations, appropriately is viewed as a protection of the shareholder's investment." Hollis, 232 F.3d at 470-471.

The court further held that it must evaluate the precise nature of the shareholder's investment to determine if the shareholder was harmed as a shareholder and not just as an employee. Id. In Hollis, the court found that the minority shareholder/employee was harmed as a shareholder by the majority shareholder, and thus owed a fiduciary duty, when:

> ". . . the value of his investment was tied directly to his employment. The benefits he received from his investment were distributed in the form of salary and certain perquisites; the firm never declared a dividend and paid no salary to its directors. Hill totally deprived Hollis of those benefits by terminating his employment and salary, closing the Florida office, and cutting him off from company benefits." Hollis, 232 F.3d at 471.

1    The policy behind adopting these fiduciary duties in closely held corporations is that minority
2 shareholders "who disagree with the direction or governance of the close corporation must rely on
3 contractual or statutory remedies, which are often nonexistent, impractical, or inadequate. . . [and]
4 [b]y adopting this broader fiduciary obligation for close corporation shareholders, alternative
5 remedies exist for oppressed shareholders, such as an equitable claim for dissolution or a claim for
6 breach of fiduciary duty." McLaughlin v. Shenk, 220 P.3d 146 (Utah 2009).
7    Here, Plaintiff was a minority shareholder and an employee. He asserts that, like the plaintiff
8 in Hollis, the value of his investment was directly tied to his employment, he received benefits from
9 his investment in the form of salary, and Defendants deprived him of those benefits by terminating
10 his employment. See id. Consequently, he claims that Defendants harmed him as a shareholder
11 which was a breach of their fiduciary duty.
12    Plaintiff has clearly and sufficiently pled that he was a shareholder who was owed a fiduciary
13 duty and that the duty was breached. The fact that some of Plaintiff's claims are rooted in his status
14 as an employee is irrelevant. See Hollis, 232 F.3d at 471. Therefore, the addition of this cause of
15 action is not futile. Accordingly, Plaintiff's motion to add breach of fiduciary duty as a ninth claim
16 and to add James Windom Kimsey as a defendant is granted.
17    B.  Retaliatory Discharge In Violation of Public Policy (Proposed Amended Claim v)
18    Plaintiff alleges that Defendant threatened him with his job if he did not contribute one
19 thousand dollars ($1,000) to Senator Harry Reid's reelection campaign. Plaintiff could not afford
20 such a substantial contribution and was unsure whether he supported Senator Reid. Plaintiff asserts
21 that Defendant then gave him the money to contribute by overcompensating him one thousand dollars
22 ($1,000) for a monthly expense report. In his proposed Amended Complaint (#29, Exhibit 1),
23 Plaintiff asserts that this claim is based on NRS 613.040 which states:

> It shall be unlawful for any person, firm or corporation doing business or employing labor in the State of Nevada to make any rule or regulation prohibiting or preventing any employee from engaging in politics or becoming a candidate for any public office in this state.

4

Defendant argues that this amendment is futile because Plaintiff alleges he was forced to participate in politics, not that he was prevented from participating, and thus NRS 613.040 does not apply. When the words of a statute have a definite and ordinary meaning, the courts should not look beyond the plain language of the statute. Harris Assoc. v. Clark County School Dist., 119 Nev. 638 (2003). The plain language of NRS 613.040 is that an employer cannot prevent or prohibit an employee from engaging in politics. The statute says nothing about requiring participation and therefore does not apply to the alleged facts. Therefore, this amendment to the Complaint would be futile. Accordingly, Plaintiff's Motion to Amend claim (v) is denied.

**II. Defendant's Motion to Dismiss or in the Alternative for Partial Summary Judgment**

A. Alternative Request for Partial Summary Judgment

The local rule for motions for summary judgment reads:

> LR 56-1.  MOTIONS FOR SUMMARY JUDGMENT.
> Motions for summary judgment and responses thereto shall include a concise statement setting forth each fact material to the disposition of the motion which the party claims is or is not genuinely in issue, citing the particular portions of any pleading, affidavit, deposition, interrogatory, answer, admission, or other evidence upon which the party relies.

Plaintiff has not provided a LR 56-1 statement and therefore the alternative request for summary judgement will be disregarded.

A. Standard for Motion to Dismiss

Pursuant to Fed. R. Civ. P. 12(b)(6), a court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to rise above the speculative level." Twombly, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint

5

must contain sufficient factual matter to "state a claim to relief that is plausible on its face." <u>Iqbal</u>, 129 S. Ct. at 1949 (internal citation omitted).

In <u>Iqbal</u>, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the Court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. <u>Id.</u> at 1950. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. <u>Id.</u> at 1949. Second, the Court must consider whether the factual allegations in the complaint allege a plausible claim for relief. <u>Id.</u> at 1950. A claim is facially plausible when the Plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. <u>Id.</u> at 1949. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." <u>Id.</u> (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, Plaintiff's complaint must be dismissed. <u>Twombly</u>, 550 U.S. at 570.

<u>C. Claims</u>

**1. Defamation Per Se (Claim iii)**

Plaintiff alleges that after his termination, a Tate Snyder representative told Tate Snyder employees that Plaintiff was trying to "put them out of business and harm them financially." (#1-1). Both parties agree the alleged statements were made during the same time that Plaintiff went to the <u>Las Vegas Review-Journal</u> and claimed Tate Snyder made illegal campaign contributions to Senator Reid's campaign. Defendant argues that even if the allegations are true, the statements were absolutely privileged.

Under Nevada law, in order to establish defamation, a party must prove: (1) there was a false and defamatory statement; (2) there was an unprivileged publication to a third person; (3) fault amounting to negligence; and (4) actual or presumed damages. <u>Chowdhry v. NLVH</u>, 109 Nev. 478

6

1  (1993).  There is an absolute privilege in instances where "a nonlawyer asserts an alleged
2  defamatory communication in response to threatened litigation or during a judicial proceeding."
3  Clark County School Dist. v. Virtual Educ. Software, Inc., 213 P.3d 496 (Nev. 2009).  In order for
4  the privilege to apply: (1) a judicial proceeding must be contemplated in good faith and under
5  serious consideration, and (2) the communication must be related to the litigation.  Id.
6       Here, Plaintiff publically accused Defendant of serious and illegal misconduct.  Defendant's
7  statements to employees were in response to those public accusations.  Based on Plaintiff's
8  statements to the Las Vegas Review-Journal, a judicial proceeding, like the current case, was clearly
9  contemplated and under serious consideration.[1]  Further, the alleged statements were related and
10 made in response to that probable litigation.  Therefore, the alleged statements to Tate Snyder
11 employees were privileged.  Accordingly, the Court dismisses the defamation per se claim regarding
12 statements made to Tate Snyder employees.
13      Plaintiff also asserts that Defendant made "knowingly false and malicious complaints" to the
14 Nevada State Board of Architecture ("the Board") accusing Plaintiff of illegal and unethical
15 activities. (#1-1).  Defendant argues that any statements made to the State Board of Architecture were
16 made in the course of a quasi-judicial proceeding and are also absolutely privileged.  (#4).
17      Under Nevada law, there is an absolute privilege for statements made in quasi-judicial
18 proceedings. Pope v. Motel 6, 121 Nev. 307, 318 (Nev. 2005).  Complaints filed with a supervisory
19 authority are considered quasi-judicial proceedings.  Pope, 121 Nev. at 318.  An example of such a
20 quasi-judicial proceeding is when a citizen files a complaint with an internal affairs bureau against a
21 police officer.  Pope, 121 Nev. at 318, citing Lewis v. Benson, 101 Nev. 300 (1985);  see also Knox
22 v. Dick, 99 Nev. 514 (1983)(statements made to Clark County Personnel Grievance Board were

---

[1]According to the article, Plaintiff had already filed an FEC complaint.
<http://www.lvrj.com/news/local-firm-under-scrutiny-for-contributions-to-reid-69836627.html>. Posted to website November 12, 2009.  Date last checked June 8, 2010.

7

1  privileged); see also Lewis v. Benson, 101 Nev. 300 (1985)(complaint filed with police department
2  alleging police misconduct was privileged).  The ". . . policy underlying the privileges is that in
3  certain situations the public interest in having people speak freely outweighs the risk that individuals
4  will occasionally abuse the privilege by making false and malicious statements." Circus Circus
5  Hotels, Inc. v. Witherspoon, 99 Nev. 56 (1983).

6       Here, Defendant's complaint was to a supervisory authority and thus was privileged.  The
7  Board is an authority which, pursuant to chapter 623 of Nevada Revised Statutes, is empowered to
8  investigate complaints, compel testimony from witnesses, and enforce disciplinary measures against
9  members of the profession.  Under rule 3.6 of the Board's own Rules of Conduct, "an architect
10 possessing knowledge of a violation of [its] rules by another architect shall report such knowledge to
11 the board."  Rule of Conduct 5.5 states: An architect shall not make misleading, deceptive, or false
12 statements or claims. Therefore, the Board is an authority to which architects may report improper
13 conduct of other architects.  Accordingly, such complaints are quasi-judicial in nature and thus
14 privileged.

15      Plaintiff contends that the complaint to the Board was not quasi-judicial because the party
16 filing the complaint, Defendant, was a business competitor.  Plaintiff cites no case law for the
17 relevance of this distinction.  Considering the lack of precedent and the Board's own Rules of
18 Conduct, which anticipate such complaints being filed by "other architects," the Court will not create
19 a new exception to privileged quasi-judicial proceedings.

20      There being an absolute privilege to the alleged statements made by Defendant, Plaintiff's
21 claim alleging defamation per se fails to state a claim upon which relief can be granted.  Accordingly,
22 the Court dismisses the defamation per se claim regarding statements made to the Board.

23      **2. False Light Invasion of Privacy (Claim iv)**

24      Plaintiff asserts that he has an actionable claim for false light invasion of privacy because on
25 or about November 13, 2009, an authorized speaking agent for Defendant commented to a reporter
26

that Plaintiff's prior public allegations against Defendant were "preposterous allegations" from a "disgruntled former employee." (#1-1). Plaintiff's prior public allegations took place on or about November 12, 2009, when Plaintiff reported to the Las Vegas Review-Journal that the Defendant forced him to contribute money to Senator Reid's reelection campaign and, among other things, did not adequately disclose its recent history of legal disputes to the agency that awarded it a large project. (#11). Defendant argues that it was permitted to give further publicity to information about the Plaintiff that was already public and therefore is not liable for false light invasion of privacy. (#11).

The Nevada Supreme Court, in its analysis of other privacy claims, recognized that the "vast majority of American jurisdictions" have adopted the language from the Restatement (Second) of Torts §652 for false light invasion of privacy claims. People for Ethical Treatment of Animals v. Bobby Berosini, Ltd., 895 P.2d 1269 (Nev. 1995). Restatement (Second) of Torts §652 states as follows:

> One who gives publicity to a matter concerning the private life of another is subject to the other for invasion of his privacy, if the matter publicized is the kind that
> (a) would be highly offensive to a reasonable person
> (b) is not of legitimate concern to the public.

The Supreme Court of the United States, in explaining the Restatement §652, stated "there is no liability when the defendant merely gives further publicity to information about the plaintiff which is already public." Cox Broadcasting Corp. v. Cohn, 420 U.S. 469 (1975) citing Restatement (Second) of Torts §652 Commentary.

Here, the information on which Defendant commented was already public at the time Defendant made the statements. Plaintiff had already publicized that he was a former employee who was angry about the Defendant's behavior. It was also apparent that Defendant already had or would deny the Plaintiff's allegations. Additionally, the matter publicized was unquestionably of legitimate public concern. Plaintiff had publicly accused Defendant of using its employees to illegally

9

contribute thousands of dollars to Senator Reid's reelection campaign. Defendant's statements were acknowledgment of those allegations. Plaintiff contends that by using the word "disgruntled" Defendant was implying that Plaintiff was "lying and being untrustworthy." (See #1-1). However, "disgruntled" is analogous to "angry" or "upset" not "lying and being untrustworthy." Therefore, Plaintiff's pleadings demonstrate none of the elements of the claim and thus lack sufficient factual matter to state a claim to relief that is plausible on its face.

Plaintiff's Response to the Motion to Dismiss (# 8) requests that the Court use the language from an Oregon Court of Appeals case to evaluate the false light invasion of privacy claim. The only difference in the language used in that case from the Restatement language is part (b) of the rule:

> (b) the actor has knowledge of or acted in reckless disregard as to the falsity of the publi[ci]zed matter and the false light in which the other would be placed. Phillips v. Lincoln County School Dist., 161 Or.App. 429 (1999).

However, even if the Court uses this language instead of that from the Restatement, Plaintiff has not sufficiently pled his claim. Plaintiff's allegations focus only on Defendant's intent toward Plaintiff and not on Defendant's knowledge of the matter. Plaintiff fails to allege that Defendant knew or acted in reckless disregard as to the falsity of the publicized matter. Further, Defendant was commenting on an already publicized matter. Therefore, Plaintiff has not pled necessary facts even under the proposed Oregon standard. Accordingly, the Court dismisses claim (iv) for false light invasion of privacy.

**3. Retaliatory Discharge In Violation of Public Policy (Claim v)**

Plaintiff alleges that Defendant threatened him with his job if he did not contribute one thousand dollars ($1,000) to Senator Reid's reelection campaign. Plaintiff told Defendant that he could not afford such a substantial contribution and was unsure whether he supported Senator Reid. Plaintiff asserts that Defendant then gave him the money to contribute by overcompensating him one thousand dollars ($1,000) for a monthly expense report. Plaintiff concedes he contributed that money, but states that he expressed strong opposition to the scheme. (#8). Defendant argues that this

claim should be dismissed because Plaintiff did not refuse to engage in the alleged illegal activity nor did he report the alleged illegal activity to the appropriate outside authorities.

The Nevada Supreme Court has specifically held that an employee may bring a claim for refusing to engage in activities that violate Nevada public policy. Western States v. Jones, 107 Nev. 704 (1991). The employee must show that the conduct he refused to engage in was either illegal or violated public policy. Allum v. Valley Bank of Nevada, 114 Nev. 1313 (1998); also Biesler v. Professional Sys. Corp., 321 F.Supp.2d 1165 (D. Nev. 2004). Additionally, terminating an employee for reporting illegal conduct of an employer violates Nevada public policy if the employee reported the illegal activity to the appropriate outside authorities. Wilstie v. Baby Grand Corp., 105 Nev. 291 (1989).

Here, Plaintiff has not alleged an illegal activity in which he refused to participate. To the contrary, Plaintiff concedes that he participated in the very activity he claims was illegal and violated public policy. Merely, having "strong opposition" is not sufficient to state a claim. Additionally, Plaintiff did not report the alleged activity to any outside authority until after his employment was terminated. Thus, he could not have been terminated for reporting the activity to an outside authority. Plaintiff has clearly not stated a claim upon which relief could be granted. Accordingly, this claim is dismissed.

**4. Retaliatory Discharge in Violation of the Fair Labor and Standards Act (Claim viii)**

Plaintiff alleges that in June 2009 he complained to the Defendant, specifically the majority shareholder, that he believed the firm was violating FLSA by not properly paying overtime to his coworkers and instead providing inadequate compensatory time off. (#1-1). Plaintiff further alleges that his June 2009 complaint about FLSA violations was a determining factor in his June 23, 2009 termination. Id. Defendant argues that this claim should be dismissed because Plaintiff is not considered an employee under FLSA, Plaintiff failed to report alleged FLSA violations to an outside source, and Plaintiff did not sufficiently plead the "form" of his complaint. (#4).

11

1  Under 29 U.S.C.A. §215, an employer may not discharge an employee because the employee
2  has filed a complaint or instituted a proceeding under FLSA.  Section 203 of FLSA defines an
3  employee as "any individual employed by an employer."  In interpreting this definition, the Supreme
4  Court has applied the "economic realities test."  See, e.g., Goldberg v. Whitaker House Co-op., Inc.,
5  366 U.S. 28 (1961).  The economic realities test focuses on the "whole activity" surrounding the
6  employment relationship in determining whether the workers are employees for the purposes of the
7  Act.  See, e.g., Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947).  In applying this test,
8  the courts generally focus on five factors: (1) the degree of control exerted by the alleged employer
9  over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the
10 business; (4) the permanence of the working relationship; and (5) the degree of skill required to
11 perform the work. Trustees of Sabine Area Carpenters' Health & Welfare Fund v. Don Lightfoot
12 Home Builder, Inc., 704 F.2d 822 (5th Cir. 1983).  Some courts have used or considered additional or
13 different factors, including: personal liability, increased risk associated with large partnership size,
14 proportionality of risk and liability, profit sharing, contributions to capital, part ownership of
15 partnership assets, including a share of assets in dissolution of the enterprise, and the right to share in
16 management subject to agreement among the partners. Wheeler v. Hurdman, 825 F.2d 257, 274 (10th
17 Cir. 1987).  The Court is not required to use any specific factors, but may use appropriate factors to
18 fully analyze the whole activity surrounding employment. See Rutherford Food Corp., 331 U.S. at
19 730.  This inquiry is highly fact-dependent and requires an analysis of the entire employment
20 relationship. Id.
21  Here, Plaintiff asserts that he was both a minority shareholder and an employee of Defendant.
22 (#1-1).  He further asserts that he was subject to the control of the majority shareholder and has a
23 contract with Defendant that provides for the terms of his employment. (#1-1).  Defendant claims that
24 as a shareholder, Plaintiff's status was inconsistent with that of an employee because he was "entitled
25 to a share of Tate Snyder's profits, had voting rights, and held an ownership interest in the company."
26

(#4).  Therefore, Defendant argues, because Plaintiff was a shareholder, he cannot be considered an employee under FLSA. (#4).

In resolving the Defendant's 12(b)(6) motion to dismiss, the Court considers the parties' allegations as well as the Shareholder Agreement between the parties, because the Plaintiff relies in part on the agreement in his Complaint.  A cursory overview of the documentation indicates that although Plaintiff had voting rights and shared in ownership of the firm, Defendant Kimsey is Tate Snyder's majority shareholder, holding 90% of the shares.  Plaintiff's status as a minority shareholder was in conjunction with his employee status and his shareholder rights were subject to significant limitation.  This information weighs in favor of finding that the Plaintiff was an employee.  Further, Plaintiff indicates that there are "one or more written agreements" which are outside of the pleadings, and thus not presently before the Court, which are of importance to Plaintiff's status as an employee. Without all the relevant documentation and facts, the Court cannot evaluate the "whole activity" surrounding employment and a decision regarding whether Plaintiff is considered an "employee" under FLSA would be premature.  See Rutherford Food Corp, 331 U.S. at 730.  Plaintiff has pled sufficient facts to demonstrate the plausibility of his employee status.  See Iqbal, 129 S. Ct. at 1949 (a claim is facially plausible when Plaintiff alleges facts that allow the court to draw a reasonable inference of that the necessary facts exist).  Accordingly, the Court denies the motion to dismiss the FLSA claim on this issue.

Defendant's contentions that Plaintiff did not report the alleged FLSA violations to an outside source and that he did not sufficiently plead the form of his complaint also do not warrant dismissal. 29 U.S.C.A. §215(a)(3) prohibits terminating an employee who has filed "any complaint" under or related to the Act.  "Any complaint" includes very informal complaints because it "protects an employee who complains to his employer about violations of the Act."  Lambert v. Ackerley, 180 F.3d 997, 1003 (9th Cir. 1999).  The "vast majority" of circuits have adopted the understanding that "[n]othing in the statute suggests that the complaint must be made externally to an administrative or

judicial body in order to qualify for protection." Kasten v. Saint-Gobain Performance Plastics Corp., 585 F.3d 310, 312 (7th Cir. 2009), citing Hagan v. Echostar Satellite, LLC, 529 F.3d 617, 625-26 (5th Cir. 2008); Moore v. Freeman, 355 F.3d 558, 562-63 (6th Cir. 2004); Lambert v. Ackerley, 180 F.3d 997, 1003-07 (9th Cir. 1999) (en banc); Valerio v. Putnam Associates Inc., 173 F.3d 35, 41-44 (1st Cir. 1999); Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1394 (10th Cir. 1997); EEOC v. White & Son Enters., 881 F.2d 1006, 1011-12 (11th Cir. 1989); Brennan v. Maxey's Yamaha, Inc., 513 F.2d 179, 181-82 (8th Cir. 1975); contra Whitten v. City of Easley, 62 Fed.Appx. 477, 480 (4th Cir. 2003) (unpublished); Lambert v. Genesee Hosp., 10 F.3d 46, 55-56 (2nd Cir. 1993).

Further, complaints do not have to be in writing to be protected. Kasten, 585 F.3d at 314. As the court in Kasten wrote:

> Conditioning the protection of the statute on the submission of a written complaint may well mean that aggrieved employees will be treated differently based on happenstance. An employee who schedules a meeting with a human resources manager to discuss the denial of overtime pay will not be protected, no matter how detailed and unequivocal the oral complaint may be, while an employee who cannot catch the manager in her office and instead leaves her a handwritten note or sends her an e-mail to communicate the same sort of complaint will be protected. I submit that the focus is more appropriately on whether the complaining employee has communicated the substance of his concerns to the employer rather than on whether the communication was written. See Lambert, 180 F.3d at 1008.

Therefore, it is irrelevant that Plaintiff did not make his complaint in writing or to an outside source. Plaintiff states in his Complaint (#1-1) that he complained to Defendant, his then employer, that "he believed that the firm was violating the federal Fair Labor Standards Act." The form of the complaint is not significant. Plaintiff has sufficiently pled that he was an employee who was terminated because he reported to his employer that he believed FLSA was being violated. Accordingly, the Court denies the motion to dismiss the FLSA claim.

**III. Conclusion**

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Amend Complaint (#29) is **GRANTED in part and DENIED in part**;

1 **IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend Complaint by adding a
2 Breach of Fiduciary Duty Claim and James Windom Kimsey as a party defendant (#29) is
3 **GRANTED**;

4 **IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend Complaint by
5 Amending the Retaliatory Discharge in Violation of Public Policy Claim (#29) is **DENIED**;

6 **IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss (#4) is
7 **GRANTED in part and DENIED in part**;

8 **IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Defamation Per
9 Se Claim (#4) is **GRANTED**;

10 **IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss False Light
11 Invasion of Privacy Claim (#4) is **GRANTED**;

12 **IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Retaliatory
13 Discharge in Violation of Public Policy (#4) is **GRANTED**;

14 Finally, **IT IS ORDERED** that Defendant's Motion to Dismiss Retaliatory Discharge
15 in Violation of the Fair Labor and Standards Act (#4) is **DENIED**.

16 DATED this 27th day of June 2011.

_____
Kent J. Dawson
United States District Judge