# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

RANDALL L. SPITZMESSER,

    Plaintiff,

v.

TATE SNYDER KIMSEY
ARCHITECTS, LTD., a Nevada Domestic
Professional Corporation, *et al.*,

    Defendants.

Case No. 2:10-CV-01700-KJD-VCF

**ORDER**

    Presently before the Court is Defendants' Motion for Summary Judgment on Plaintiff's First, Second, Sixth, Seventh, and Ninth Causes of Action (#63). Plaintiff filed a response in opposition (#68) to which Defendants replied (#73).

I.  Background

    Plaintiff Randall L. Spitzmesser ("Spitzmesser") is a licensed residential designer in the State of Nevada, meaning that any non-residential work performed by Plaintiff requires an architect's approval. Plaintiff was hired by Defendant Tate Snyder Kimsey Architects, LTD., ("TSKA") in July of 2000. No employment contract was signed at that time. Late in 2005, Plaintiff was invited to become a shareholder in TSKA. He was provided with an Offering Memorandum ("Memorandum") containing information regarding the offer to purchase shares in TSKA. The Memorandum states that

ownership of shares does not guarantee employment. "Ownership of Shares does not guarantee employment...and Purchasers may be terminated as an employee of the Company at any time, with or without cause, expect as specifically provided otherwise in a written agreement signed by the Company's President." Defendants' Motion for Summary Judgment (#63), Exhibit 2, Sec. C(2)(j). "...Ownership of Shares does not guarantee a Purchaser continued employment by the Company." Id. at Sec. D(1).

However, the Memorandum was not incorporated by reference into the signed Shareholder Agreement ("Agreement") which is a fully integrated contract as evidenced by the following language: "This Agreement constitutes the entire agreement between the parties as to the subject matter hereof, and any previous agreement between the parties as to the subject matter hereof is superseded by this Agreement." Defendants' Motion for Summary Judgment (#63), Exhibit 3, ¶ 22(b). Further, the language of the Memorandum denying a guarantee of employment is absent from the Agreement. The Agreement requires the company or its shareholders to purchase all shares from employees terminated for cause, but does not include language requiring the shareholder to sell except in case of death, disability, or attaining the age of 60. The Agreement also prohibits engagement in outside work substantially similar to the work of TSKA without prior written consent of the President of TSKA. Plaintiff signed the Agreement on or about January 6, 2006, purchasing 3.33 % of TSKA for $57,000. Plaintiff affirms that he read the Agreement and chose not to have an attorney review it. Plaintiff was not required to become a shareholder to maintain his employment. Two other individuals signed the same Agreement as Plaintiff, Stephen C. Rank ("Rank") and Walter E. Estay ("Estay").

In early 2008, Plaintiff was required to purchase additional shares of TSKA for $40,000, giving him 8.66% ownership of TSKA. The $40,000 was obtained via loan. Plaintiff asserts that his salary at TSKA was the primary means of paying off this loan. Rank and Estay, employee/shareholders, had recently been fired for failing to purchase additional stock in TSKA.

Plaintiff alleges that Kimsey admitted to Plaintiff that TSKA had settled with Rank and Estay because "they were not at-will employees."[1]

TSKA began to lay-off employees in 2008, although there is some dispute about the severity of the financial condition of TSKA based largely on the timing and alterations in amending TSKA's 2008 and 2009 tax returns, as well as on potential future projects. Beginning in the spring of 2009, Plaintiff began to use his accrued vacation time in the afternoons, a few hours at a time. Defendants maintain that this was conduct harmful to TSKA. However, Plaintiff maintains that Defendant James Windom Kimsey ("Kimsey"), a shareholder and named partner at TSKA, instructed all employees of TSKA to take their vacation time in order to remove those liabilities from the balance sheets. Further, during 2009, Defendants allege that Plaintiff brought in only a single project, while Plaintiff alleges he brought in four.

In the summer of 2009, Kimsey began to suspect that Plaintiff was engaging in unauthorized outside work. It is undisputed that Plaintiff engaged in some outside work both before and after becoming a shareholder, However, Plaintiff maintains he did so with the oral consent of Kimsey, and that the work was residential while TSKA primarily engaged in large public projects. TSKA terminated Plaintiff's employment on or about June 23, 2009, citing the recession and lack of business. TSKA offered to purchase Plaintiff's shares, but Plaintiff refused to sell. Finally, during discovery, Defendant TSKA filed amended tax returns for the years 2008 and 2009 approximately one week prior to Kimsey's deposition, and produced these amendments on the last day of discovery.

## II. Analysis

### A. Legal Standard

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

---

[1] Defendants object to this and other statements as contradicting Plaintiff's deposition, constituting a sham affidavit solely to avoid summary judgment. However, Defendants have failed to indicate which portion of Plaintiff's deposition he has allegedly contradicted.

3

material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e).

All justifiable inferences must be viewed in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The court need only resolve factual issues of controversy in favor of the non-moving party—by denying the motion—where the facts specifically averred by that party contradict facts specifically averred by the movant. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment). Evidence must be concrete and cannot rely on "mere speculation, conjecture, or fantasy. O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th Cir. 1986). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 248.

4

B.  Breach of Contract

Under Nevada law, a claim for breach of contract must show (1) the existence of a valid contract, (2) breach by the defendant, and (3) damage as a result of the breach. Brown v. Kinross Gold U.S.A., Inc., 531 F. Supp. 2d 1234, 1240 (D. Nev. 2008). The Court is to "effectuate the intent of the parties, which may be determined in light of the surrounding circumstances if not clear from the contract itself." Anvui, LLC v. G.L. Dragon, LLC, 123 Nev. 212, 215, 163 P.3d 405, 407 (2007) (internal quotations and citation omitted). However, "[a]ny ambiguity…should be construed against the drafter." Id. at 215-16.

Here, Plaintiff asserts an implied contract of continued employment, which he claims was breached when TSKA fired him, causing damage in the form of lost wages and benefits. Defendants' arguments address only the existence of the contract. Looking to the Agreement itself, it lacks any language regarding the existence or non-existence of any guarantee of employment; this is a notable change from the Memorandum of Offering which explicitly denies any such guarantee. However, the Memorandum is not incorporated by reference into the Agreement, and the Agreement is a fully integrated contract. Further, while the Agreement provides for the purchase of shares from employees terminated for cause, there is no similar provision applying to those who are fired "at-will." Surrounding circumstances further cloud the factual question of whether a contract for continued employment existed. For example, Plaintiff alleges that Kimsey admitted to him that Rank and Estay, individuals who signed the same shareholder agreement with Plaintiff, were not at-will employees. Therefore, construing the ambiguity of the contract against its drafter, TSKA, and viewing the allegations in the light most favorable to Plaintiff, genuine issues of material fact persist. Accordingly, Defendants' motion for summary judgment is denied as to this claim.

C.  Breach of Implied Covenant of Good Faith and Fair Dealing

The implied covenant of good faith and fair dealing is breached in an employment context "when an employer, acting in bad faith, discharges an employee who has established contractual

rights of continued employment and who has developed a relationship of trust, reliance and dependency with the employer." D'Angelo v. Gardner, 107 Nev. 704, 712, 819 P.2d 206, 211 (1991).

Given the ambiguities noted above, and construing them in the light most favorable to the Plaintiff, this Court cannot find that no contractual rights of continued employment existed. Further, Plaintiff allegedly invested an additional $40,000 into TSKA, which amount he procured by loan. If, as Plaintiff alleges, his primary means of repaying the loan was his salary at TSKA, this investment appears to be evidence of a relationship of trust, reliance, and dependency on TSKA. Accordingly, Defendants' motion for summary judgment is denied as to this claim.

### D. Unjust Enrichment

"An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." Leasepartners Corp. v. Robert L. Brooks Trust Dated November 12, 1975, 113 Nev. 747, 755, 942 P.2d 182, 187 (1997). "The doctrine of unjust enrichment…applies to situations where there is no legal contract but where the [defendant] is in possession of money or property which in good conscience and justice he should not retain but should deliver to another or should pay for." Id. at 756 (internal quotations, citations, and alterations omitted).

Here, Plaintiff alleges that he has not been paid his representative share of profits and income as a shareholder. However, the Agreement governing the sale and purchase of shares is an express contract, making the doctrine of unjust enrichment inapposite. Accordingly, Defendants' motion for summary judgment is granted as to this claim.

### E. Breach of Fiduciary Duty

Nevada law requires three elements for a claim of breach of fiduciary duty: (1) that a fiduciary duty existed, (2) that the duty was breached, and (3) that the breach proximately caused damage. Klein v. Freedom Strategic Partners, LLC, 595 F. Supp. 2d 1152, 1162 (D. Nev. 2009). This Court has already acknowledged the guidance of Hollis v. Hill, 232 F.3d 460 (5th Cir. 2000) in

predicting how the Nevada Supreme Court would rule on whether fiduciary duties are owed to minority shareholders (#36). The Hollis court held that:

> …shareholders do not enjoy fiduciary-rooted entitlements to their jobs. Such a result would clearly interfere with the doctrine of employment-at-will. Rather, the courts have limited relief to instances in which the shareholder has been harmed as a shareholder. The fiduciary duty in the close corporation context, as in the context of public corporations, appropriately is viewed as a protection of the shareholder's investment.

Hollis v. Hill, 232 F.3d 460, 470-71 (5th Cir. 2000).

In determining whether the shareholder was in fact harmed as a shareholder, rather than only as an employee, the Hollis court looked to the following non-exclusive factors:

> whether the corporation typically distributes its profits in the form of salaries; whether the shareholder/employee owns a significant percentage of the firm's shares; whether the shareholder/employee is a founder of the business; whether the shares were received as compensation for services; whether the shareholder/employee expects the value of the shares to increase; whether the shareholder/employee has made a significant capital contribution; whether the shareholder/employee has otherwise demonstrated a reasonable expectation that the returns from the investment will be obtained through continued employment; and whether stock ownership is a requirement of employment. The minority's shareholder interest is not injured, however, if the corporation redeems shares at a fair price or a price determined by prior contract or the shareholder is otherwise able to obtain a fair price.

Hollis, 232 F.3d at 471. While these factors are not binding on this Court, we find them useful in this inquiry. Further, Defendants' reliance on Merola v. Exergen Corp., 423 Mass. 461, 465, 668 N.E.2d 351, 354 (1996) is unhelpful. As noted above, the Hollis decision is useful as it persuasively articulates the likely ruling of the Nevada Supreme Court. Merola has no such merit, nor do the factors considered by that court differ substantively from those used in Hollis.[2]

///
///
///
///

---

[2] Similarly, it is unhelpful to the Court to be provided with lengthy quotations which have been cobbled together from various sections of an opinion without any indication of that fact, such as ellipses. Such problems are exacerbated when pinpoint citations are not provided for the quoted text.

7

The policy behind adopting these fiduciary duties in closely held corporations is that

> …minority shareholders who disagree with the direction or governance of the close corporation must rely on contractual or statutory remedies, which are often nonexistent, impractical, or inadequate…By adopting this broader fiduciary obligation for close corporation shareholders, alternative remedies exist for oppressed shareholders, such as an equitable claim for dissolution or a claim for breach of fiduciary duty.

McLaughlin v. Schenck, 220 P.3d 146, 156 (internal citation omitted).

The Hollis court also persuasively suggests that no breach occurs where the adverse action was taken "pursuant to a legitimate business purpose." Hollis, 232 F.3d at 470 (citing Wilkes v. Springside Nursing Home, Inc., 370 Mass. 842, 851-52, 353 N.E.2d 657, 663-64 (1976)). However, if such a legitimate purpose exists, "the minority shareholder must be given an opportunity to demonstrate that the purpose could have been achieved through means less disruptive to its shareholder interests." Hollis at 470.

Here, Plaintiff is a shareholder, and TSKA likely owes Plaintiff a fiduciary duty. Defendants and Plaintiff disagree as to whether TSKA distributed its profits to shareholders by distribution and salary, or by salary alone. Further, it is unclear whether 8.66% qualifies as a "substantial percentage" of TSKA. Plaintiff does not allege that he is a founder. Plaintiff does not allege that he received his shares in payment for services rendered. Plaintiff asserts that he believed that his stock at TSKA would increase in value. Plaintiff has paid $97,000 for his total shares, which is not an insignificant sum. Plaintiff has alleged that the return on his investment was his employment. This factor becomes more important in light of the undisputed fact that Plaintiff purchased additional shares following the termination of two other employee/shareholders for failing to purchase additional shares, likely making the purchase of shares a condition of employment. Further, Defendants have failed to introduce evidence that the stock price offered is fair, while Plaintiff contends that Defendants acted to deliberately devalue his shares and that Defendants continues to undervalue them. These facts must be viewed in the light most favorable to Plaintiff, and the ambiguity of the contract regarding when shares must be sold and at what price by employees terminated "at-will" must be construed

against the TSKA as the drafter. Collectively, the above queries raise issues of fact about whether Plaintiff has been harmed as a shareholder.

Finally, if Defendants can establish a legitimate business purpose for firing Plaintiff, then no breach has occurred. However, even if Defendants have such a purpose, Defendants fail to allege that they gave Plaintiff any opportunity to advocate other means of achieving TSKA's ends which would reduce the impact on Plaintiff as a shareholder.

Defendants have failed to demonstrate that there is no genuine issue of material fact and that Defendants are entitled to judgment as a matter of law against the claim for breach of fiduciary duty. Accordingly, Defendants' motion for summary judgment on the claim for breach of fiduciary duty is denied.

### F.  Injunctive Relief

Both parties concede that Plaintiff's claim for injunctive relief is now moot. Accordingly, the claim for injunctive relief is dismissed as moot.

### III.  Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (#63) is **GRANTED in part**, and **DENIED in part**;

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment on the claim for unjust enrichment is **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is **DENIED** as to all other claims.

DATED this 3rd day of July 2012.

_____
Kent J. Dawson
United States District Judge